# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | | |
|---|---|---|---|
| **ERNEST D. SHIELDS,** | ) | | |
| | ) | | |
| **Petitioner,** | ) | | |
| | ) | **No. 16 C 10265** | |
| **v.** | ) | | |
| | ) | **Chief Judge Rubén Castillo** | |
| **UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| **Respondent.** | ) | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Ernest D. Shields ("Petitioner") is serving a 15-year sentence for possessing a firearm following a felony conviction in violation of 18 U.S.C. § 922(g). He filed a motion to vacate his sentence under 28 U.S.C. § 2255 ("the petition") alleging a claim based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), and a claim of ineffective assistance of counsel. (R. 1, Pet.) For the reasons set forth below, the petition is denied.

## BACKGROUND

At approximately 8:00 p.m. on January 10, 2011, Chicago Police Officers Craig Coglianese and David Bachler were on routine patrol on the south side of Chicago in an unmarked police vehicle. *United States v. Shields*, 789 F.3d 733, 738-41 (7th Cir. 2015). They observed Petitioner's vehicle parked and partially blocking a crosswalk, which violated a Chicago municipal ordinance. *Id.* The officers stopped their vehicle alongside Petitioner's. *Id.* Officer Coglianese then exited his vehicle and approached Petitioner, who was sitting in the driver's seat, and asked to see his driver's license. *Id.* Petitioner handed the officer his license, then exited his vehicle and walked toward the rear of the vehicle with Officer Coglianese. *Id.* When Petitioner reached the back of the police vehicle, he did not stop to talk to the officer and

instead began running east down an adjacent street. *Id.* Officer Coglianese began chasing him. *Id.* As Officer Coglianese followed Petitioner down an alley, he saw Petitioner take a firearm out of his right coat pocket. *Id.* Shortly thereafter, the officer caught up to Petitioner and pushed him to the ground. *Id.* Officer Bachler arrived on the scene a minute or so later, and the two officers placed Petitioner in handcuffs. *Id.* When they rolled him over they discovered a loaded .22-caliber handgun underneath him on the ground. *Id.* This was the same gun that Officer Coglianese had observed Petitioner remove from his pocket. *Id.* The officers placed Petitioner in the back of their police vehicle, and Officer Coglianese read Petitioner his Miranda rights. *Id.* Officer Coglianese then asked him, "Why are you running with a gun?" and Petitioner responded, "I shouldn't have had that weapon on me." *Id.*

On June 22, 2011, Petitioner was indicted by a grand jury for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). *Id.* The indictment also alleged that Petitioner was subject to a mandatory minimum sentence of 15 years under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), due to his prior criminal record. *Id.* Prior to trial, Petitioner filed a motion to suppress the firearm and his statement following his arrest. *Id.* In that motion, he argued that the traffic stop conducted by the officers was illegal, that the officers had conducted an illegal search of his person, and that the statement he made to police about the gun was involuntary. *Id.* At an evidentiary hearing on the motion, Officers Coglianese and Bachler both testified, describing how Petitioner had fled and how they had recovered the firearm from him. *Id.* Petitioner did not testify at the hearing. *United States v. Shields*, No. 11 CR 440, ECF No. 77. The Court denied the motion in a written opinion, finding that the officers had credibly and consistently testified about their recovery of the firearm and the statement Petitioner had made after being given a *Miranda* warning. *Id.*, ECF No. 60.

Approximately four weeks before the scheduled trial, Petitioner obtained new counsel, Andrea Gambino, who filed a motion for reconsideration of the denial of his suppression motion or, in the alternative, a request that the Court reopen the suppression hearing to allow Petitioner to testify. *Id.*, ECF Nos. 72, 75. Gambino also filed a motion to dismiss the indictment on Second Amendment grounds. *Id.*, ECF No. 76. She filed a separate motion to dismiss, arguing that federal jurisdiction could not be established beyond a reasonable doubt due to the lack of evidence showing that the weapon Petitioner possessed had traveled in interstate commerce. *Id.*, ECF No. 90. At a subsequent hearing, Gambino asked for a continuance of the trial so that she could have more time to file replies in support of the two motions. *Id.*, ECF No. 142. The Court denied the request, stating, "[E]ven though you are a very capable attorney and have tried mightily, I don't see where, if I allowed you two months, two years to file a reply brief, you're going to change my thinking on either motion." *Id.* at 3. Thereafter, the Court denied the motions. *Shields*, 789 F.3d at 740.

The jury trial began on March 25, 2013, and lasted three days. *Id.* On the second day of the trial, Petitioner stipulated that he had incurred a prior felony conviction before the date of his arrest. *Id.* At the close of the evidence, the jury found Petitioner guilty of possession of a firearm by a felon. *Id.* The presentence report ("PSR") calculated that Petitioner had a total offense level of 33 and a criminal history category of VI, resulting in an advisory guidelines range of 235 to 293 months in custody. *Id.* The PSR also noted that Petitioner had three prior "violent felony" convictions under Illinois law and was therefore subject to a mandatory minimum sentence of 15 years to life under the ACCA. *Id.* Prior to the sentencing hearing, Petitioner discharged Gambino and, at his request, the Court permitted him to proceed *pro se*. *Id.* at 740-41 & n.9. Among other arguments, Petitioner argued that the ACCA enhancement violated *Alleyne v. United States*, 133

S. Ct. 2151 (2013), because the fact of his prior convictions had not been determined by the jury. *Id.* at 741. The Court found the ACCA enhancement applicable, and sentenced him to the mandatory minimum sentence of 15 years, followed by five years of supervised release. *Id.*

Petitioner appealed, asserting various errors at trial and sentencing. *Id.* at 741-51. The U.S. Court of Appeals for the Seventh Circuit affirmed his conviction and sentence in all respects. *Id.* On November 2, 2015, the U.S. Supreme Court denied his petition for a writ of certiorari. *Shields v. United States*, 136 S. Ct. 420 (2015). On November 1, 2016, Petitioner filed the present petition.  (R. 1.) He first claims that his enhanced sentence is invalid in light of the Supreme Court's decision in *Johnson*. (R. 1, Pet. at 6-15.) He also claims that his trial attorney, Gambino, provided him with ineffective assistance on various grounds. (*Id.* at 16-29.)

## LEGAL STANDARD

A federal prisoner can move to vacate his sentence on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013).

## ANALYSIS

### I.    *Johnson* **claim**

Petitioner first claims that his 15-year sentence is invalid in light of *Johnson* and that he is entitled to be resentenced.[1] (R. 1, Pet. at 1-15.) The ACCA provides enhanced sentences for defendants convicted of violating 18 U.S.C. § 922(g) who have "three previous convictions by

---

[1] Without the ACCA enhancement, Petitioner's conviction under 18 U.S.C. § 922(g) carried a statutory maximum sentence of ten years. 18 U.S.C. § 924(a)(2).

any court . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). "Violent felony" is defined as "any crime punishable by imprisonment for a term exceeding one year" that meets one of the following requirements: (1) it "has as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) it is burglary, arson, extortion, or an offense involving the use of explosives; or (3) it "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(i)-(ii). The first clause is commonly referred to as the "elements clause," the second as the "enumerated crimes clause," and the third as the "residual clause."

In *Johnson*, the Supreme Court invalidated the residual clause as unduly vague, but left intact the enumerated crimes clause and the elements clause. *See Johnson*, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."); *Stanley v. United States*, 827 F.3d 562, 564 (7th Cir. 2016) ("*Johnson* holds that the residual clause is unconstitutionally vague. *Johnson* does not otherwise affect the operation of the Armed Career Criminal Act."). There is no question that Petitioner was convicted of violating 18 U.S.C. § 922(g), or that he has convictions for aggravated battery, residential burglary, and armed robbery under Illinois law. He argues, however, that none of these offenses can be characterized as violent felonies after *Johnson*. (R. 1, Pet. at 11-15.) The Court addresses each conviction in turn.

### A.    Aggravated Battery Conviction

Petitioner first argues that his 1994 Illinois aggravated battery conviction no longer qualifies as a violent felony under the ACCA. (R. 1, Pet. at 7-12.) Because the residual clause has been invalidated, Petitioner's aggravated battery conviction must fall under either the elements clause or the enumerated crimes clause to count as an ACCA predicate. Aggravated

battery is obviously not one of the enumerated crimes, 18 U.S.C. § 924(e)(2)(B)(ii), which leaves the elements clause as the only possibility. As stated above, a prior conviction falls under the elements clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* The Supreme Court has interpreted "physical force" in this context to mean "*violent* force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 140-42 (2010) ("*Curtis Johnson*").

In determining whether a prior conviction qualifies as an ACCA predicate, courts ordinarily apply a "categorical approach," which focuses solely on the text of the statute underlying the conviction. *United States v. Mathis*, 136 S. Ct. 2243, 2248 (2016). Application of this approach "is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime." *Id.* The Court simply "lines up that crime's elements alongside those of the generic offense and sees if they match." *Id.* The analysis becomes difficult, however, when the relevant statute "ha[s] a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder." *Id.* at 2249. In other words, "[a] single statute may list elements in the alternative, and thereby define multiple crimes," some of which involve violent force while others do not. *Id.* In such cases, the Court employs a "modified categorical approach." *Id.* Under this approach, the Court may look to "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* But even under the modified categorical approach, the question is not "what the defendant did in fact," but rather, "whether the elements of the crime . . . bring the conviction within the scope of the recidivist enhancement." *Stanley*, 827 F.3d at 565; *see also Descamps v. United States*, 133 S. Ct. 2276,

2287 (2013) ("Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." (citation omitted)).

Under Illinois law, a person commits battery "if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILL. COMP. STAT. 5/12-3. The offense is elevated to aggravated battery if certain conditions are met, including where the offender knew the victim to be a peace officer, knew the victim to be pregnant, or committed the offense on public property. 720 ILL. COMP. STAT. 5/12-3.05. A conviction based on the first prong of the statute—*i.e.*, "causing bodily injury"—has as an element the use, attempted use, or threatened use of physical force, and therefore qualifies as a violent felony under the elements clause of the ACCA.[2] *Hill v. Werlinger*, 695 F.3d 644, 650 (7th Cir. 2012). By contrast, a conviction based on the second prong of the Illinois statute—*i.e.*, involving "physical contact of an insulting or provoking nature"—does not qualify as a violent felony for purposes of the ACCA. *See United States v. Evans*, 576 F.3d 766, 768 (7th Cir. 2009) (explaining that a conviction under the second prong of Illinois aggravated battery statute—for conduct like "spit[ting] on a pregnant woman"—does not qualify as a predicate offense for federal sentencing

---

[2] To the extent Petitioner is arguing that a conviction under the Illinois aggravated battery statute does not involve the level of force required by *Curtis Johnson*, the Court finds such an argument unavailing. The Seventh Circuit held in *Hill*—which was decided after *Curtis Johnson* and specifically referenced that opinion—that a conviction under the first prong of the Illinois battery statute involves the level of force needed to qualify as an ACCA predicate. *Hill*, 695 F.3d at 649-50. *Hill* has not been overturned, and the Seventh Circuit has continued to uphold its reasoning in recent opinions. *See United States v. Bailey*, No. 16-1280, 2017 WL 716848, at *1 (7th Cir. Feb. 23, 2017) ("We already have concluded that the phrase 'causes bodily harm' in the Illinois statute[] defining battery . . . means force that would satisfy [*Curtis Johnson*'s requirement of violent physical force."); *United States v. Waters*, 823 F.3d 1062, 1064 (7th Cir.), *cert. denied*, 137 S. Ct. 569, 196 L. Ed. 2d 448 (2016) (observing that it had previously concluded that an Illinois conviction for domestic battery—which contains provisions that are parallel to the battery statute and applies where the victim is a family or household member—involves the level of force required by *Curtis Johnson*, and defendant "has not persuaded us that this precedent should be overturned").

purposes); *United States v. Saunders*, No. 15 C 8587, 2016 WL 1623296, at *2 (N.D. Ill. Apr. 25, 2016) ("Battery [under Illinois law] does not automatically qualify as a violent felony because there is an avenue by which battery may occur without force.").

Given these different ways of violating the statute, the Seventh Circuit has held that the Illinois aggravated battery statute is divisible, permitting application of the modified categorical approach. *See United States v. Lynn*, ---F.3d----, 2017 WL 1101089, at *9 (7th Cir. Mar. 24, 2017); *Stanley*, 827 F.3d at 566; *United States v. Rodriguez-Gomez*, 608 F.3d 969, 973 (7th Cir. 2010); *see also Bell v. United States*, No. 16-CV-736-NJR, 2017 WL 553013, at *3 (S.D. Ill. Feb. 10, 2017) (looking to charging document to determine whether petitioner's Illinois conviction for aggravated battery to a police officer fell under the elements clause of the ACCA); *Rogers v. United States*, 179 F. Supp. 3d 835, 841-42 (C.D. Ill. 2016) (same).

In consulting the charging document in Petitioner's case, it is clear that Petitioner's aggravated battery conviction was premised on the first prong of the statute, as it involved bodily harm to the victim. The indictment charged that Petitioner "intentionally and knowingly without legal justification caused bodily harm to Willie Edwards while using deadly weapons, to wit: a hammer handle and a stick with nails on its end, by beating Willie Edwards about the head and body." (R. 7-1, State Ct. Records at 4.) The Court thus finds that Petitioner's conviction has as an element the use, attempted use, or threatened use of physical force, and therefore qualifies as a violent felony notwithstanding *Johnson*. *See Lynn*, 2017 WL 1101089, at *10 (holding that defendant's convictions for aggravated battery involving the "causing bodily harm" prong of the Illinois battery statute "were properly classified as violent felonies" under the elements clause of the career offender guideline); *Stanley*, 827 F.3d at 565 (observing that "Stanley's [Illinois] conviction for aggravated battery of a peace officer . . . is outside the scope of *Johnson*" because

it is classified as a violent felony under the elements clause of the career offender guideline);

*Bell*, 2017 WL 553013, at *3 (holding that petitioner's Illinois conviction for aggravated battery constituted a violent felony under the elements clause of the ACCA and was unaffected by *Johnson* where indictment charged that he caused bodily harm to the victim); *Rogers*, 179 F. Supp. 3d at 841-42 (same).

### B. Residential Burglary

Petitioner next argues that his 1995 Illinois residential burglary conviction no longer qualifies as an ACCA predicate after *Johnson*. (R. 1, Pet. at 8, 12-13.) Burglary is one of the offenses contained in the enumerated clause. 18 U.S.C. § 924(e)(2)(B)(ii). Because it is an enumerated crime, "[n]o particular level of force is required for a burglary to count as a predicate—in fact, no force at all." *Dawkins v. United States*, 809 F.3d 953, 955 (7th Cir. 2016). In *Mathis*, the Supreme Court held that burglary for purposes of the ACCA means "an unlawful or unprivileged entry into . . . a building or other structure, with intent to commit a crime." 136 S. Ct. at 2248. At the time of Petitioner's conviction in 1995, the Illinois residential burglary statute provided: "A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft."[3] 720 ILL.

---

[3] The Court offers no opinion about whether the Illinois residential burglary statute currently in effect, which has been amended to "include[] the offense of burglary as defined in Section 19-1," constitutes a violent felony under the ACCA. *See* 720 ILL. COMP. STAT. 5/19-3 (eff. June 1, 2001). The amendment complicates matters because the generic offense of burglary—which includes not only burglary to buildings but also burglary to vehicles—is broader than the definition intended by the ACCA. *See Mathis*, 136 S. Ct. at 2250-51 (holding that Iowa burglary statute, which included burglary to vehicles, was broader than generic burglary encompassed within the enumerated crimes clause of the ACCA); *United States v. Haney*, 840 F.3d 472, 475 (7th Cir. 2016) (holding that defendant's 1970s burglary conviction under Illinois law did not constitute an ACCA predicate because the statute in effect at that time applied not only to buildings but also to vehicles, which made it broader than the generic burglary offense intended by the ACCA). The Seventh Circuit has left open the question of whether Illinois' current burglary statute is divisible, such that courts can resort to charging documents or other state court records to determine whether the offense involved burglary of a dwelling or other structure. *See Haney*, 840 F.3d at 475-76 & n.2. Because Petitioner's conviction involved a different version of the statute, the Court need not delve into this complex issue.

COMP. STAT. 5/19-3 (eff. Jan. 1, 1982, to May 31, 2001). The Illinois Supreme Court has

presumed that the term "dwelling place" as used in the statute refers to a "structure." *See People

v. Bales*, 483 N.E.2d 517, 521 (Ill. 1985).

Thus, the Seventh Circuit held in *Dawkins* that Illinois residential burglary constitutes a

predicate offense for purposes of a parallel sentencing enhancement contained in the U.S.

Sentencing Guidelines. [4] 809 F.3d at 954-55. In reaching this conclusion, the court relied on the

Supreme Court's decision in *Taylor v. United States*, 495 U.S. 575 (1990), which held that "a

person has been convicted of a burglary for purposes of a § 924(e) enhancement if he is

convicted of any crime, regardless of its exact definition or label, having the basic elements of

unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to

commit a crime." *Id.* at 599.

Although *Dawkins* was decided several months before *Mathis*, the court in *Dawkins*

applied essentially the same definition of generic burglary adopted by the Supreme Court in

*Mathis*. Indeed, the definitions of burglary set forth in *Taylor* and *Mathis* both closely match the

language of the Illinois residential burglary statute in effect at the time of Petitioner's conviction.

*See Mathis*, 136 S. Ct. at 2248; *Taylor*, 495 U.S. at 599. Thus, it is no surprise that in a recent

unpublished case, the Seventh Circuit concluded post-*Mathis* that "residential burglary under

---

[4] *Dawkins* and several other cases cited in this opinion arose in the context of a challenge to the career
offender provision of the U.S. Sentencing Guidelines, which, like the ACCA, provides for an enhanced
sentence where the defendant has prior convictions for a "crime of violence." 827 F.3d at 564. Until 2016,
the career offender guideline defined "crime of violence" in the same manner as the ACCA: with an
elements clause, an enumerated crimes clause, and a residual clause. *See* U.S.S.G. § 4B1.2(a)(1) (eff.
Nov. 1, 2009). The Seventh Circuit previously interpreted *Johnson* to mean that the residual clause in the
career offender guideline was also void for vagueness. *United States v. Hurlburt*, 835 F.3d 715, 725 (7th
Cir. 2016) (en banc). This holding is no longer valid after the Supreme Court's recent decision in *Beckles
v. United States*, --- S. Ct. ---, 2017 WL 855781 (Mar. 6, 2017), which held that the Sentencing
Guidelines are not subject to vagueness challenges. Notwithstanding the evolution of the law on this
issue, the Court finds that cases interpreting the terms contained in the career offender guideline remain
instructive.

§ 5/19-3 *is* 'burglary' as defined in *Taylor* . . . thus making the crime an appropriate ACCA predicate without regard to the invalidated residual clause." *United States v. McClain*, --- F. App'x ---, 2016 WL 7436145, at \*2 (7th Cir. Dec. 22, 2016); *see also Khoury v. United States*, No. 15-CR-30013-DRH, 2017 WL 373295, at \*2 (S.D. Ill. Jan. 26, 2017) (finding that petitioner's 1993 and 1994 Illinois residential burglary convictions constituted violent felonies under the ACCA post-*Mathis*); *Berry v. Krueger*, --- F. Supp. 3d ---, 2017 WL 65420 (C.D. Ill. Jan. 6, 2017) (finding that petitioner's 1984 Illinois residential burglary conviction constituted a violent felony under the ACCA post-*Mathis*). Therefore, the Court concludes that Petitioner's Illinois residential burglary conviction counts as a predicate offense under the ACCA notwithstanding *Johnson*.

### C.      Armed Robbery Conviction

Petitioner also argues that his 2005 Illinois conviction for armed robbery does not constitute a violent felony after *Johnson*. (R. 1, Pet. at 8, 13-15.) Again, this conviction counts as a predicate if it falls within either of the two clauses that remain valid after *Johnson*. Armed robbery is not one of the enumerated crimes, 18 U.S.C. § 924(e)(2)(b), which leaves only the elements clause. As stated above, an offense qualifies as a violent felony under the elements clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(ii). Under the Supreme Court's decision in *Curtis Johnson*, this means "force capable of causing physical pain or injury to another person." 559 U.S. at 140-42.

The Illinois robbery statute provides that "[a] person commits robbery when he or she knowingly takes property . . . from the person or presence of another by the use of force or by threatening the imminent use of force." 720 Ill. Comp. Stat. 5/18-1(a). The offense is elevated

to aggravated robbery when the defendant commits robbery as defined by the statute "while indicating verbally or by his or her actions to the victim that he or she is presently armed with a firearm or other dangerous weapon." 720 ILL. COMP. STAT. 5/18-1(b)(1). By its terms, the statute includes as an element the use of force or, at a minimum, threatening the imminent use of force, which tracks the language of the ACCA's elements clause. 18 U.S.C. § 924(e)(2)(B)(ii). Because of the plain language of the robbery statute, the Seventh Circuit has long held that a conviction under that statute falls under the elements clause of the ACCA. *United States v. Carter*, 910 F.2d 1524, 1532 (7th Cir. 1990) ("It is beyond dispute that under Illinois law, robbery is an offense that has as an element the use or threatened use of force."); *United States v. Dickerson*, 901 F.2d 579, 584 (7th Cir. 1990) (holding that Illinois robbery statute "in its own terms includes the elements of either 'use of force or . . . threatening the imminent use of force,' that clearly come within the scope of 18 U.S.C. § 924(e)(2)(B).").

Petitioner believes that some minimal level of force could be used to commit robbery under the Illinois statute that would not satisfy the definition of force required by *Curtis Johnson*—for example, where a defendant "tug[s] a key chain attached to clothing free from its owner." (R. 1, Pet. at 14.) The Court disagrees that the act of pulling something attached to a person's clothing without his or her permission is not "capable of causing physical pain or injury," which is all that *Curtis Johnson* requires. 559 U.S. at 140-42. But in any event, *Dickerson* remains binding precedent in this Circuit, and this Court must follow it unless it is overturned by the Seventh Circuit. Notably, both the Seventh Circuit and district judges within this Circuit have continued to rely on *Dickerson* even after the *Curtis Johnson* decision. *See United States v. Nigg*, 667 F.3d 929, 937 (7th Cir. 2012) (applying *Dickerson* to reject argument that conviction under Arizona robbery statute did not constitute a violent felony under the

ACCA); *United States v. Jones*, No. 07 CR 415, 2016 WL 6995569, at *3 (N.D. Ill. Nov. 29, 2016) (applying *Dickerson* and holding that Illinois armed robbery conviction constituted a violent felony for purposes of the ACCA); *Adams v. United States*, No. 16-1096, 2016 WL 4487835, at *2 (C.D. Ill. Aug. 25, 2016) (same).

Indeed, in a recent case, the Seventh Circuit rejected an argument like Petitioner's in the context of determining whether a federal bank robbery conviction constituted a violent crime for purposes of a parallel federal sentencing enhancement contained in the U.S. Sentencing Guidelines. *United States v. Armour*, 840 F.3d 904, 908-09 (7th Cir. 2016). The Seventh Circuit concluded that the offense involved the level of force required by *Curtis Johnson* even though it could be accomplished through "'intimidation,' as distinct from by 'force or violence.'" *Id.* As the Seventh Circuit explained:

> *Curtis Johnson* teaches that the violent force that must be feared for robbery by intimidation to be a crime of violence has a low threshold—a fear of a slap in the face is enough. This low threshold of violent force is necessarily satisfied in attempted bank robbery by intimidation. A bank employee can reasonably believe that a robber's demands for money to which he is not entitled will be met with violent force of the type satisfying *Curtis Johnson* because bank robbery . . . inherently contains a threat of violent physical force.

*Id.* at 909 (citations omitted). Another judge in this District recently concluded that this reasoning applies with equal force to the Illinois armed robbery statute, and this Court agrees. *See Jones*, 2016 WL 6995569, at *3 (applying *Armour* and *Dickerson* to reject Section 2255 petition arguing that Illinois armed robbery conviction did not constitute a violent felony under the ACCA). For these reasons, the Court concludes that Petitioner's Illinois armed robbery conviction falls under the elements clause of the ACCA. Petitioner thus has three prior violent felony convictions as defined by the ACCA and is properly serving an enhanced sentence under that statute. His first claim is denied.

## II.    Ineffective assistance of counsel claim

Petitioner's other claim is that he received ineffective assistance from his trial counsel. (R. 1, Pet. at 16-29.) Under the Sixth Amendment, a criminal defendant is entitled to "'effective assistance of counsel'—that is, representation that does not fall 'below an objective standard of reasonableness' in light of 'prevailing professional norms.'" *Bobby v. Van Hook*, 558 U.S. 4, 6 (2009) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To prevail on such a claim, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland*, 466 U.S. at 687. On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). In other words, counsel "need not be perfect, indeed not even very good, to be constitutionally adequate." *McAfee v. Thurmer*, 589 F.3d 353, 355-56 (7th Cir. 2009) (citation omitted); *see also Harrington*, 562 U.S. at 110 ("[T]here is no expectation that competent counsel will be a flawless strategist or tactician[.]").

In evaluating counsel's performance, the Court must avoid employing the benefit of hindsight and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125 (2011). The Court should also consider counsel's performance "as a whole rather than focus on a single failing or oversight." *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010). As the Seventh Circuit has explained: "[I]t is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an

average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Sussman v. Jenkins*, 636 F.3d 329, 351 (7th Cir. 2011) (citation omitted).

On the prejudice prong, Petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id*. "In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id*. at 112. When the petitioner complains that his attorney failed to make an argument that itself had no merit, he cannot establish prejudice. *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

### A.      Failure to question Officer Coglianese about a civil lawsuit

Petitioner first argues that his trial counsel, Gambino, was ineffective in failing to investigate a prior lawsuit filed against Officer Coglianese. (R. 1, Pet. at 16.) An attorney has a general duty to investigate the material facts of a case and can render ineffective assistance by failing to conduct a reasonable investigation. *See Rompilla v. Beard*, 545 U.S. 374, 380-81 (2005). What is considered "reasonable" is viewed from the attorney's perspective at the time. *Id.* Counsel is not required to "scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Id.* at 383. A petitioner who claims that his Sixth Amendment rights were violated by his attorney's failure to adequately investigate must provide "sufficiently

precise information, that is, a comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (citation omitted).

Here Petitioner points to *Quarles v. City of Chicago, et al.*, No. 04-cv-3753 (N.D. Ill. filed June 1, 2004), a civil lawsuit brought by another individual against Officer Coglianese and more than 20 other Chicago police officers. (R. 1, Pet. at 20.) That case stemmed from a 2002 incident in which the plaintiff was a passenger in a vehicle involved in a drive-by shooting, which was pursued by Chicago police in a high-speed chase. *Quarles*, No. 04-cv-3753, ECF No. 1 ¶¶ 5-6. Police eventually stopped the vehicle, but the plaintiff fled the scene and was pursued on foot by several unnamed officers. *Id.* ¶¶ 10-11. He claimed that he was knocked to the ground and brutally beaten by 15 to 25 Chicago police officers even though he was not resisting. *Id.* He further alleged that the officers conspired amongst each other to cover up the unwarranted beating by claiming that he had resisted arrest, that he had sustained his injuries by falling down, and that he had been in possession of a firearm. *Id.* ¶ 12. The case ultimately settled out of court. *Id.*, ECF No. 12.

Petitioner believes that Gambino was ineffective in failing to discover the lawsuit or use it to impeach Officer Coglianese at trial.[5] (R. 1, Pet. at 18.) The record reflects that Gambino was aware of the civil lawsuit, however, as she referenced it in her motion for acquittal filed shortly after trial. *See United States v. Shields*, No. 11 CR 440, ECF No. 100 at 6. Petitioner believes

---

[5] In his petition, Petitioner mentions only the *Quarles* case. (R. 1, Pet. at 19-20.) He attaches as an exhibit a complaint filed in another case, *McWilliams v. McWilliams, et al.*, No. 06-CV-3058 (N.D. Ill. filed June 5, 2006), which also named Officer Coglianese as a defendant. Petitioner offers no explanation for why he attached this case to his petition, and the Court can discern few similarities between *McWilliams* and Petitioner's case. *McWilliams* involved a husband and wife involved in a contentious divorce; the wife called the police and claimed that the husband had threatened her. Officer Coglianese and another officer responded to the call, and the husband claimed that they kicked down his door, unlawfully searched his home, and in the process stole $2,500 in cash. *Id.*, ECF. No. 1. The case ultimately settled out of court. *Id.*, ECF No. 163. Without some argument from Petitioner as to how Gambino might have used the *McWilliams* case at his criminal trial, and why her failure to do so prejudiced him, the Court declines to pursue the matter further.

that Gambino should have used the lawsuit at trial to impeach Officer Coglianese, but the Court does not find deficient performance or prejudice on this ground. Had counsel sought to introduce evidence about the *Quarles* lawsuit, this Court would not have permitted it.

Petitioner does not point to any sworn statements made by Officer Coglianese in the *Quarles* case, and it is thus not entirely clear how Gambino would have used the case to attack his credibility. To the extent Petitioner wanted Gambino to question Office Coglianese about the complaint itself, this would raise hearsay problems. The complaint might be admissible as a public record, *see* FED. R. EVID. 803(8), but the allegations contained within it constitute a second level of hearsay. *See Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013) (observing that third-party statements "do not become admissible for their truth by virtue of their presence in a public record and instead must have an independent basis for admissibility"). Petitioner does not explain how the plaintiff's allegations in *Quarles* might have been admitted under an exception to the hearsay rule, nor can the Court discern any applicable exception.

Assuming Gambino could have gotten around that threshold problem, evidence about Officer Coglianese's prior conduct also raises concerns under Federal Rule of Evidence 404(b). Under that rule, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. CIV. P. 404(b)(2). But it is "not enough for the proponent of the other-act evidence simply to point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc). Instead,

"the rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Id.*

Petitioner apparently believes that the *Quarles* lawsuit would have been admissible to show that Officer Coglianese had a *modus operandi* of planting guns on fleeing suspects. (*See* R. 1, Pet. at 18-19.) Evidence of *modus operandi* is usually used to prove identity, but identity was not an issue at Petitioner's trial. *See United States v. Robinson*, 161 F.3d 463, 467 (7th Cir. 1998); *Patterson v. City of Chi.*, No. 15-CV-4139, 2017 WL 770991, at *3-4 (N.D. Ill. Feb. 28, 2017). Even if the evidence was marginally relevant, evidence of a prior bad act is admissible only if it "bears a singular strong resemblance to the pattern of the offense charged with the similarities between the two crimes sufficiently idiosyncratic to permit an inference of pattern." *Gomez*, 763 F.3d at 854 (citation and internal quotation marks omitted). The *Quarles* lawsuit does not meet that standard.

The underlying incident alleged in *Quarles* occurred in 2002—nine years prior to Petitioner's arrest by Officer Coglianese. *Quarles*, No. 04-cv-3753, ECF No. 1. It involved a drive-by shooting and a high-speed chase, neither of which occurred in Petitioner's case. *Id.* The crux of the plaintiff's claim in *Quarles* was that multiple officers had brutally beaten him without justification. *Id.* Although Petitioner complained that he was kicked while Officer Coglianese was attempting to restrain him, he did not raise the type of excessive force allegations contained in *Quarles*. The *Quarles* complaint did contain an allegation that the officers had planted a gun on the plaintiff, but the plaintiff's allegations were far too general to be of any use against Officer Coglianese. All of the allegations in the complaint referred generally to "the defendant officers"—of which there were 25—and nowhere did it describe what individual actions Officer Coglianese was alleged to have taken in connection with the plaintiff's arrest. *Id.* It is thus

18

unclear whether Officer Coglianese was even the officer who was alleged to have planted the gun. *Id.* Additionally, the *Quarles* case settled out of court and there were never any findings of fact regarding Officer Coglianese; indeed, he and the other officers expressly denied any wrongdoing in the stipulation and release that was filed when the case settled. *Id.*, ECF No. 12 at 2. Therefore, the *Quarles* lawsuit does not meet the standard of admissibility for prior bad acts evidence under Rule 404(b).[6]

Even if the lawsuit were found to be admissible under Rule 404(b), the Court must also consider Rule 403, "which applies with full force in this context." *Gomez*, 763 F.3d at 856 (citation and internal quotation marks omitted). In conducting the balancing test required by Rule 403, the Court would have excluded this evidence. Allowing inquiry into the *Quarles* lawsuit would have led to a "distracting and time consuming mini-trial[] regarding the merits of these other allegations," particularly given that there were no findings of fact made against Officer Coglianese in the *Quarles* case. *Patterson*, 2017 WL 770991, at *3-4. Rule 408 would have barred Gambino from attempting to use the settlement in the *Quarles* case to prove that Officer Coglianese engaged in the actions alleged by the plaintiff. *See* FED. R. EVID. 408(a) (prohibiting introduction of evidence regarding a settlement to "prove or disprove the validity . . . of a disputed claim"). Additionally, the events in *Quarles* occurred nearly a decade before Petitioner's arrest, and the case did not involve actions by Officer Coglianese sufficiently similar

---

[6] To the extent Petitioner believes the evidence could have been used to show a "habit" by Officer Coglianese, this argument fails for the same reason. Evidence of a "habit" can be admitted under Rule 406. FED. R. EVID. 406 ("Evidence of a person's habit . . . may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice."). But "before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Nelson v. City of Chi.*, 810 F.3d 1061, 1073-74 (7th Cir. 2016) (citation omitted). Evidence of one other incident involving Officer Coglianese nine years prior to the events underlying Petitioner's arrest and involving a different factual scenario would not come close to meeting that standard.

to the misconduct alleged by Petitioner in his criminal case. The allegations in *Quarles*—which described the brutal beating of an unarmed suspect by more than 20 Chicago police officers— were also highly inflammatory and carried a "high likelihood that the jury [would] draw conclusions based on improper considerations." *Patterson*, 2017 WL 770991, at *4.

Given the lack of similarity in the underlying events, the distance in time between them, the lack of detail regarding the precise actions taken by Officer Coglianese in the *Quarles* case, and the inflammatory nature of the allegations in *Quarles*, the Court would not have permitted Gambino to inquire into this lawsuit even if she had sought to do so. *See id.* (refusing to permit plaintiff in suit against police officers to introduce evidence of prior lawsuits naming the officers as defendants, where plaintiff's request was "a thinly veiled attempt to do precisely what Rule 404(b) forbids: ask the jury to make an inference that because the defendants committed battery or falsified police reports in the past (which may or may not be true), they did the same thing on the day in question in this lawsuit"); *Hill v. City of Chi.*, No. 06 C 6772, 2011 WL 3840336, at *6 (N.D. Ill. Aug. 30, 2011) (excluding inflammatory evidence that officer physically abused suspect during interrogation in another case, because "there is a real danger that evidence of Officer Halloran's interrogation of Gomez would induce the jury to decide this case based on Defendant Halloran's conduct in connection with Gomez—not Hill").

It is also worth noting that the other officer involved in Petitioner's arrest, Officer Bachler, was not named as a defendant or otherwise involved in the *Quarles* lawsuit. He offered testimony that was highly consistent with Officer Coglianese's, and he personally saw the gun recovered from Petitioner after he was restrained by Officer Coglianese. The *Quarles* lawsuit would have done nothing to undercut Officer Bachler's credibility. Nor would it have undercut the evidence of the inculpatory statement Petitioner made to police about his possession of the

firearm after his arrest. For these reasons, the Court finds that Petitioner has failed to establish ineffective assistance of counsel on this ground. *See Stone*, 86 F.3d at 717.

### B.    Failure to request *Giglio* materials

Petitioner makes a related argument that Gambino was ineffective in failing to make a formal motion for *Giglio* materials or other discovery.[7] (R. 1, Pet. at 19-22.) He argues that had Gambino filed such a motion, the prosecution "may well have tendered the civil lawsuit, Chicago Police Department records of complaints, and Office of Professional Standards records and statements of Off. Coglianese." (*Id.* at 19.)

As explained above, Gambino's performance must be viewed with a high degree of deference, leaving room for a variety of strategic approaches and even reasonable errors. *See Harrington*, 562 U.S. at 104-05; *Premo*, 562 U.S. at 124-26. Gambino first appeared in this case less than a month before trial—sixth in a succession of attorneys who had represented Petitioner in the nearly two years the case had been pending. *See Shields*, No. 11 CR 440, ECF Nos. 9, 16, 22, 30, 62, 69. She could have reasonably presumed that all available discovery motions had already been made by Petitioner's five prior attorneys. Immediately upon taking the case, rather than focusing on discovery, she focused on obtaining dismissal of the charges, seeking reconsideration of the suppression issue and dismissal of the indictment on other grounds. *Id.*, ECF Nos. 75, 78, 90. The Court granted a short extension of the trial date to consider her motions. *Id.*, ECF No. 72. After the Court denied her motions—and her request for another continuation of the trial date—she clearly focused on the impending trial. *See id.*, ECF No. 142, Tr. of Proceedings at 3-6.

---

[7] In *Giglio v. United States*, the Supreme Court expanded the scope of the disclosures required by *Brady v. Maryland*, 373 U.S. 83 (1963), to include potentially exculpatory material relating to the credibility of a government witness. 405 U.S. 150, 154-55 (1972).

Gambino's performance at trial demonstrated that she was well-prepared, well-versed in the underlying facts, and had a clear strategy for obtaining an acquittal: attacking the officers' accounts and focusing on the lack of any corroborating evidence to show that Petitioner was in possession of a firearm. The trial transcripts reflect that she was a capable advocate who put the government's evidence to the test each step of the way. She participated in jury selection, raised numerous objections, gave an opening statement, cross-examined the government's witnesses, participated in the jury instruction conference, and made a compelling closing argument. *Id.*, ECF Nos. 143 & 144, Trial Trs. As the Supreme Court has observed, "[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington*, 562 U.S. at 111.

But regardless of whether Gambino should have filed a formal discovery motion, Petitioner does not point to any specific evidence that she would have obtained as a result of such a motion other than the *Quarles* lawsuit, discussed above. Instead he offers only speculation about the existence of potentially useful documents that counsel might have obtained. (*See* R. 1, Pet. at 19-23.) This is insufficient to raise a viable ineffective-assistance claim. *See Richardson*, 379 F.3d at 488 ("Without any evidence, . . . Richardson cannot show that he was prejudiced by his counsel's alleged failure to investigate[.]");*United States v. Ashimi*, 932 F.2d 643, 649 (7th Cir. 1991) (observing that to find for the petitioner on a claim of failure to investigate, "[the court] must know what the attorney would have discovered after 'adequate' investigation"); *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991) ("[A] habeas court cannot even begin to apply *Strickland*'s standards to such a claim [for failure to investigate or failure to elicit favorable testimony] unless and until the petitioner makes a specific, affirmative showing

as to what the missing evidence or testimony would have been." (citation and internal quotation marks omitted)).

It is worth noting that even if Gambino had filed a discovery motion, it is doubtful that this Court would have delayed the trial to permit discovery at that late stage. On the first day of trial, Petitioner—speaking on his own behalf—complained to the Court that he had not had an opportunity to conduct sufficient discovery. *Shields*, No. 11 CR 440, ECF No. 143, Trial Tr. at 8-9. In denying his request for a continuance, the Court noted that the trial would be essentially "a replay of the motion to suppress," as it involved testimony from the same two officers about events that "took all of about five or ten minutes." *Id.* at 9. As the Court observed, this was not "a very complicated case." *Id.* Indeed, this Court denied Gambino's request for a second continuance of the trial date to permit further briefing on her motion to reopen the suppression issue. *See id.*, ECF No. 142, Tr. of Proceedings at 3-6. This is a good indication that the Court would not have permitted further delays in the case without a strong justification—far more than the vague assertions Petitioner makes here about the need for more discovery. Therefore, the Court finds that Petitioner has failed to demonstrate ineffective assistance on this ground.

### C. Failure to object to the police dispatch tape

Petitioner's final argument is that Gambino was ineffective in failing to object to the admission of a police dispatch tape recorded during the time Officer Coglianese was chasing Petitioner. (R. 1, Pet. at 23.) Petitioner believes that "[i]n failing to object to hearsay of the dispatcher's tapes, [Gambino] weakened her argument against the credibility of Off. Coglianese." (*Id.*) It is true that Gambino did not object to the admission of the tape, although she did object to a transcript of the tape prepared by the government being used for any purpose other than as an aid to the jury. *Shields*, No. 11 CR 440, ECF. No. 143, Trial Tr. at 165, 192-93.

The Court found merit to Gambino's objection and limited the government's use of the transcript in the manner she requested. *Id.* at 193. Had Gambino objected to the admission of the tape in its entirety, the Court would have overruled her objection. It has long been recognized that police dispatch tapes are admissible under exceptions to the hearsay rule for present sense impressions and excited utterances. *See, e.g.*, *United States v. Thomas*, 453 F.3d 838, 844 (7th Cir. 2006); *United States v. Boyce*, No. 10-CR-533, 2011 WL 5078186, at *3 (N.D. Ill. Oct. 26, 2011); *United States v. Wimberly*, No. 94 CR 591, 1995 WL 215043, at *1-2 (N.D. Ill. Apr. 10, 1995); *United States v. Campbell*, 782 F. Supp. 1258, 1260-61 (N.D. Ill. 1991) The Court would have found those exceptions satisfied here, given that the recording was made contemporaneously with Officer Coglianese chasing a fleeing suspect. *See Wimberly*, No. 94 CR 591, 1995 WL 215043, at *1-2 (finding that radio communications between officers that described the officers' contemporaneous pursuit of a fleeing suspect were admissible under hearsay exceptions for excited utterances and present sense impressions).

Additionally, it is abundantly clear from the record that Gambino did not *want* the police dispatch tape excluded, because it was a key piece of evidence supporting her theory that Officer Coglianese had concocted the story about Petitioner having a gun after the fact. She elicited testimony and argued at numerous points during trial that nowhere on the dispatch tape did Officer Coglianese yell out, "Gun!" or otherwise alert his partner that he had seen a gun in Petitioner's hand. Far from "weakening" her attack on Officer Coglianese's credibility, the tape bolstered her argument by providing irrefutable, objective evidence that Officer Coglianese did not say anything about Petitioner having a gun while he was chasing him. Although Gambino's strategy ultimately did not succeed with the jury, the Court finds this attributable to the fact that two police officers provided credible, consistent testimony that Petitioner was in possession of a

firearm, rather than to any failing by Gambino. *See United States v. Farr*, 297 F.3d 651, 657-58 (7th Cir. 2002) ("[L]awyers are not miracle workers. Most convictions follow ineluctably from the defendants' illegal deeds.") (citation omitted). The Court finds that Petitioner has failed to establish an entitlement to relief on this ground.

As a final matter, in his reply brief Petitioner requests that the Court conduct an evidentiary hearing on his ineffective-assistance claim. (R. 10, Reply at 7.) The Court need not hold a hearing under Section 2255 if the "files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (petitioner is entitled to a hearing in a Section 2255 case if he "alleges facts that, if proven, would entitle him to relief" (citation omitted)). Even accepting all of Petitioner's allegations as true, the records and filings in this case establish that he was not deprived of his Sixth Amendment right to counsel at trial. Therefore, the Court need not conduct an evidentiary hearing on this claim. For these reasons, the petition is denied.

## III.     Certificate of Appealability

To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). For the reasons fully explained herein, the Court finds that reasonable jurists could not debate the outcome of the petition or find a reason to encourage Petitioner to proceed further. The Court declines to grant him a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the motion to vacate under 28 U.S.C. § 2255 (R. 1) is

DENIED. Petitioner is DENIED a certificate of appealability.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: March 31, 2017**